## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**CITY WALK – URBAN
MISSION INC.,**

      *Plaintiff,*

**v.**                      **CASE NO.:  4:20cv244-MW/MAF**

**WAKULLA COUNTY FLORIDA,**

      *Defendant.*
_____/

### ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR <u>PRELIMINARY INJUNCTION</u> [1]

"Lord, when did we see you hungry or thirsty or a stranger or needing clothes or sick or in prison, and did not help you?" *Matthew* 25:44.[2] To which the Lord replied, "Truly I tell you, whatever you did not do for one of the least of these, you did not do for me." *Id.* 25:45. Scripture teaches that by serving those in need, particularly those shunned by society, one serves the Lord. *See James* 2:14–16 ("What good is it, my brothers and sisters, if someone claims to have faith but has

---

[1] This Court considered, after conducting a telephonic hearing on June 11, 2020, Plaintiff's Motion for Preliminary Injunction, ECF No. 14, Plaintiff's Supplemental Memorandum, ECF No. 22, Defendant's Response, ECF No. 24, Plaintiff's Reply, ECF No. 25, Defendant's Supplemental Brief on Ripeness, ECF No. 29, Plaintiff's Supplemental Brief on Ripeness, ECF No. 30, Plaintiff's Notice of Factual Development, ECF No. 33, Plaintiff's Notice of Supplemental Authority, ECF No. 36,  and all exhibits attached.

[2] All scripture references are from the New International Version Bible.

no deeds? Can such faith save them? Suppose a brother or a sister is without clothes and daily food. If one of you says to them, 'Go in peace; keep warm and well fed,' but does nothing about their physical needs, what good is it?").[3] Inspired by scripture, Plaintiff believes that God has called on it to use the space it has available to serve those in need. Plaintiff's mission is to serve everyone regardless of their past because "[e]very saint has a past [and] [e]very sinner has a future." Plaintiff, therefore, wants to continue to use a three-bedroom home as a religious transition home to help as many of those in need as it can—including registered sex offenders—to find love, forgiveness, and a new life in Jesus.

Defendant amended its Land Use Development Code, limiting Plaintiff to housing only two unrelated adults in the three-bedroom home at a given time (the "two-adult limitation"). Plaintiff cannot operate its religious transition home to house three or more unrelated adults anywhere in Wakulla County based on the amendment.

The Religious Land Use and Institutionalized Persons Act ("RLUIPA")—a Congressional act—provides broader protection for religious exercise than is

---

[3] *See also Hebrews* 13:2–3 ("Do not forget to show hospitality to strangers, for by so doing some people have shown hospitality to angels without knowing it. Continue to remember those in prison as if you were together with them in prison, and those who are mistreated as if you yourselves were suffering."); *Isaiah* 61:1 ("The Spirit of the Sovereign LORD is on me, because the LORD has anointed me to proclaim good news to the poor. He has sent me to bind the brokenhearted, to proclaim freedom for the captives and release from darkness for the prisoners[.]").

available under the First Amendment. RLUIPA prohibits, among other things, a government from imposing a substantial burden on an entity's or person's religious exercise unless the government demonstrates that the imposition of the burden is in furtherance of a compelling interest and is the least restrictive means of furthering that compelling interest.

This Court finds Defendant's two-adult limitation amounts to a substantial burden on Plaintiff's religious exercise and that Defendant has failed to show that the burden imposed is the least restrictive means of furthering a compelling interest. Accordingly, Plaintiff is entitled to a preliminary injunction.

## I. STANDARD FOR PRELIMINARY INJUNCTION

"A preliminary injunction is appropriate if the movant demonstrates all of these elements: (1) a substantial likelihood of success on the merits; (2) that the preliminary injunction is necessary to prevent irreparable injury; (3) that the threatened injury outweighs the harm the preliminary injunction would cause the other litigant; and (4) that the preliminary injunction would not be averse to the public interest." *Chavez v. Fla. SP Warden*, 742 F.3d 1267, 1271 (11th Cir. 2014) (citation omitted). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites." *ACLU of Fla., Inc. v. Miami-Dade Cty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009) (citation omitted). "Failure to show any of the four

factors is fatal, and the most common failure is not showing a substantial likelihood of success on the merits." *Id.*

## II. BACKGROUND

The parties had the opportunity to present witnesses during the evidentiary hearing. They chose, however, to rely instead on the declarations and exhibits attached to their motions. After considering the parties' motions, exhibits, declarations, and Plaintiff's complaint, the following facts—with the limited exception of whether Plaintiff could relocate its religious transition home for three or more unrelated adults—are undisputed for purposes of this motion.[4]

Plaintiff is a church incorporated as a Florida not-for-profit corporation. Plaintiff believes, among other things, that God has called on it to use the space it has to serve those in need, particularly those who may be the most shunned in society—registered sex offenders. Plaintiff's motto—"Every saint has a past [and] [e]very sinner has a future"—reflects its mission to serve everyone regardless of his or her past.

In furtherance of its belief and mission, Plaintiff opened a religious transition home for adults in Wakulla County. The religious transition home is located at 55 Ball Court, Crawfordville, Florida 32327 (the "Property"). The Property is in Defendant's jurisdiction and is subject to its Land Use Development Code (the

---

[4] Defendant may, of course, dispute some of these facts as the case moves forward.

"Code"). The Property has three bedrooms and can host three or more unrelated adults. Plaintiff runs a religious transition home ministry (the "Program") at the Property. The Program is intended to run for a period of twelve months. During the Program, the participating adults use the Property as a home and are required to abide by certain rules, including being present for religious devotion periods and abstaining from drug and alcohol use. The goal of the Program is to help these adults find love, forgiveness, and a new life in Jesus.

The adults participating in the Program do not pay rent, but they pay a program fee which covers counseling, job training, job placement, food, and lodging they receive from Plaintiff. These adults, who do not otherwise have jobs, work at Plaintiff's Thrift Store and Outreach Center located in Tallahassee, Florida. Since 2013, roughly eighty adults have participated in the Program, and there has never been a period exceeding six months during which Plaintiff has not operated the Program at the Property.

At all relevant times, the Property has been zoned RR-1 Semi-Rural Residential ("RR-1"). Before Plaintiff signed a lease on the Property, its director called Defendant's Planning and Zoning Department (the "Department") to ask if Plaintiff needed to do anything to comply with the regulation before it opened its transition home ministry at the Property. The Department informed the director that Plaintiff could have up to six unrelated adults at the Property and read her the "family

5

care home" provision. In August 2013, based on the Department's representation and the fact that in 2013 the Code allowed for family care home[5] as a principal use, Plaintiff entered a ten-year lease for the Property and drafted the lease to reflect that it was authorized to use the Property as a family care home.

For a year and a half, Plaintiff operated the Program without an issue or any complaint from Defendant. This changed, however, when the neighbors learned that the Property's residents included registered sex offenders. First, the neighbors filed a complaint with the Wakulla County Code Enforcement. Then, someone posted numerous flyers containing one of the Property's resident's registration page from the Florida Department of Law Enforcement all over the neighborhood. A few days later, and after one of the neighbors had threatened Plaintiff that "[t]he county is suing you and they're about to shut you down," the Wakulla County Tax Collector notified Plaintiff that it was running a business and needed to obtain a business license. Unfortunately for Plaintiff, its predicament was about to get worse.

---

[5] At the time Plaintiff signed the lease on the Property, the Code defined family care home as "[a]ny dwelling occupied by six or fewer persons, including staff, whether operated for profit or not, which provides for a period exceeding 24 hours, one or more personal services for persons who require such services not related to the owner or administrator by law, blood, marriage or adoption, and not in foster care. The personal services, in addition to housing and food services, may include but not be limited to personal assistance with bathing, dressing, housekeeping, adult supervision, emotional security, and other related services, but not including medical services. For the purposes of this Code, family care homes shall not be deemed to including rooming or boarding homes, fraternities, sororities, clubs, monasteries or convents, hotels, emergency shelters, residential treatment facilities, recovery homes or nursing homes." ECF No. 1-3, at 3–4.

A Wakulla County Sheriff's Deputy entered the Property without a warrant, took pictures, and emailed them to one of the neighbors and encouraged him to send the pictures to the Wakulla County Code Enforcement. Heeding the Sheriff's Deputy's advice, one of the neighbors sent the pictures with the Deputy's comment to a Code Enforcement Officer. A Sergeant from the Sheriff's Department even threatened Plaintiff's director, telling her, "I'll tell you if you're breaking the law. I'll follow you until I find a reason to arrest you."

Shortly thereafter, in June 2015, the Property's landlord received a Notice of Violation which charged her with using the Property as a "boardinghouse."[6] On July 8, 2015, the Wakulla County Code Enforcement Board (the "Board") held a public hearing. *See* ECF No. 1-4. The Board concluded, among other things, that the Property was being used as a boardinghouse, which is not a permitted use in the RR-1 zoning district. The Board reached this conclusion even though in 2013 Defendant had informed Plaintiff that it could use the Property as a family care home, which was, at that time, permitted by the Code in the RR-1 zoning district. As will become apparent, this would not be the last time Defendant changed its interpretation of the Code as it relates to Plaintiff.

---

[6] The Code defines boardinghouse as "[a]ny building or part thereof, other than a hotel, motel, or restaurant, where meals or lodging are provided for a fee for three or more unrelated persons where no cooking or dining facilities are provided in individual rooms." ECF No. 1-2, at 4.

The Board ordered Plaintiff's landlord to, among other things, cease the use of the Property as a boardinghouse. The Board went on to state that if the landlord failed to comply with its order, the Chairman was authorized to enter an order imposing fines in the amount of $250 for the first day and $100 each day thereafter. On or before July 29, 2015, a Code Enforcement Officer inspected the Property and filed an affidavit of compliance with the Board. On July 31, 2015, the Board entered an order acknowledging compliance—although the record is not clear how the Property came into compliance.

On October 19, 2015, the Wakulla County Board of Commissioners amended the Code. ECF No. 1-3. Prior to the amendment, the Code allowed the following types of uses in an RR-1 zoning district: (1) Principal Uses: Emergency shelter homes, family care homes, light infrastructure, mobile homes, and single-family dwellings; (2) Conditional Uses: Cemeteries, churches and other houses of worship including convents and rectories, public and private recreation facilities, and schools. After the amendment, the conditional uses remained the same, but the Code struck the emergency shelter homes and family care homes from principal uses and replaced them with Community residential home (small) ("CRH").[7] As the Code

---

[7] The Code defines CRH (small) as "[a] dwelling unit licensed to serve residents who are clients of the Department of Elder Affairs, the Agency for Persons with Disabilities, the Department of Juvenile Justice, or the Department of Children and Families or licensed by the Agency for Health Care Administration or other applicable state agency which provides a living environment for 6 or fewer unrelated residents who operate as the functional equivalent of a family, including such supervision and care by supporting staff as may be necessary to meet the physical,

currently stands, Plaintiff's use of the Property to house three or more unrelated adults is impermissible under any principal or conditional uses in the RR-1 zoning district. Plaintiff also does not qualify as a CRH (small).

Around March 4, 2020, the County issued a Notice of Repeat Violation to Plaintiff's landlord based on a complaint the County received in February 2020. ECF No. 1-5. The notice stated, among other things, that the Property was being used by three non-related persons as a boardinghouse in violation of the Code. The notice required Plaintiff's landlord to cease using the Property to house three or more non-related persons. It further stated that if the violation was not corrected, the case would be "presented to the Code Enforcement Board at its next available meeting for consideration of the imposition of fines and costs." ECF No. 1-5.

The following are the disputed facts between the parties: The parties dispute whether Plaintiff is able to relocate its Program and house three or more unrelated adults in a different district within the County. Defendant provides a declaration from Ms. Somer Pell, the Board's Director of Planning and Community Development, to suggest that Plaintiff may relocate its Program. ECF No. 24-1. In her declaration, Ms. Pell identifies certain districts where Plaintiff could, according

---

emotional, and social needs of the residents. A Community residential home (small) shall not be located within a radius of 1,000 feet of another existing such Community residential homes (small). Community Residential homes (small) shall comply with all notification requirements and procedures found in Chapter 419, Florida Statutes." ECF No. 1-3, at 5.

to her interpretation of the Code, set up the Program as a principal use or a conditional use. ECF No. 24-1. Specifically, Ms. Pell stated, in an affidavit, that Plaintiff could set up the Program as a principal use in certain commercial districts, such as C-2 General Commercial District, C-3 Heavy Commercial District, TC Crawfordville Town Center Zoning District, HIC Crawfordville High Intensity Commercial Zoning District, and as a conditional use in certain residential districts, such as R-3 Multifamily Residential District and HDR Crawfordville High Density Residential Zoning District. ECF No. 24-1, ¶¶ 8–9. This Court finds Ms. Pell's declaration not credible for multiple reasons.

First, Ms. Pell's declaration is inconsistent with her previous discussions with Plaintiff. On March 11, 2020, after Plaintiff's landlord received the Notice of Repeat Violation, Plaintiff's director and a board member met with Ms. Pell. During the meeting, Ms. Pell informed Plaintiff there were no zoned districts where Plaintiff could operate the Program as intended—to house three or more unrelated adults. ECF No. 25-1. Plaintiff's director's affidavit is corroborated by the declaration of the board member that joined the director in the meeting, ECF No. 25-2, and is consistent with an email exchanged between Ms. Pell and Plaintiff. ECF No. 25-3 ("Currently, no zoning districts contemplate a group home as principle [sic] or conditional use."). Further, Ms. Pell did not challenge Plaintiff's recollection of their interaction in her declaration. Defendant's attorney's attempt to distinguish the email

10

fails because the email, when read in context with Plaintiff's declarations and Ms. Pell's failure to challenge Plaintiff's recollection, indicates that Ms. Pell unequivocally informed Plaintiff that it could not operate the Program to house three or more unrelated adults in any district within the County and could only operate the Program with two unrelated adults.

Second, Ms. Pell's declaration appears to be a post-hoc attempt by Defendant to fit this case within a line of cases that hold that the ability to relocate alleviates the burden on a plaintiff. Defendant has already changed its interpretation of the Code as it relates to Plaintiff, and Ms. Pell's declaration is another attempt by Defendant to interpret the Code in a way that is convenient for it.

Third, the Code, on its face, does not allow Plaintiff to establish the Program in districts identified by Ms. Pell. Defendant characterized Plaintiff's use of the Property as a boardinghouse on multiple occasions. ECF Nos. 1-4 & 1-5. Even Ms. Pell interpreted Plaintiff's use of the Property as a "[b]oardinghouse, roominghouse, lodginghouse or dormitory." ECF No. 24-1, ¶ 6. None of the uses described by Ms. Pell, including a boardinghouse, are permitted uses, either principal or conditional, for the districts identified by Ms. Pell.

Finally, when pressed during the telephonic hearing about provisions under which Plaintiff could establish the Program as intended, Defendant's lawyer could only point to a provision in the Code that allows "other uses" if the planning director,

Ms. Pell, determines that Plaintiff's use is similar or compatible to those allowed in a given district. ECF No. 28, at 34:17–35:5. Plaintiff's use does not appear to be similar to or compatible with the uses permitted in the districts identified by Ms. Pell.

In short, Ms. Pell's declaration that Plaintiff may operate its Program in another district within the County is not credible. This Court finds that Plaintiff cannot establish the Program as a principal or conditional use in any district within the County. Further, the Code does not allow Plaintiff to seek a variance. The combination of the two findings leads this Court to find that Plaintiff is unable to establish the Program to house three or more unrelated adults anywhere in the County.

In sum, Plaintiff can continue to run the Program at the Property, but not as intended—Plaintiff cannot house three or more unrelated adults in its three-bedroom home; it can, however, house two unrelated adults. Moreover, Plaintiff is unable to set up the Program as intended anywhere in the County.

## III.  PLAINTIFF'S CLAIMS

Plaintiff's motion for preliminary injunction relies solely on its RLUIPA claims.[8] Specifically, Plaintiff seeks a preliminary injunction because Defendant

---

[8] Plaintiff brings a six-count complaint against Defendant. Counts I through IV allege violations of RLUIPA's various provisions. Count V alleges a violation of the Equal Protection

violated (1) the substantial burden, 42 U.S.C § 2000cc(a)(1); (2) the equal terms, 42

U.S.C. § 2000cc(b)(1); and (3) the exclusion and limits, 42 U.S.C. § 2000cc(b)(3)

provisions of RLUIPA.

This Court finds that Plaintiff is likely to succeed on its substantial burden

provision claim and, therefore, this Court need not, and does not, evaluate Plaintiff's

equal terms provision[9] and exclusion and limits provision claims.[10]

## IV.  SUBSTANTIAL LIKELIHOOD OF SUCCESS

### 1.  *RLUIPA — History and Purpose* [11]

To understand the breadth of RLUIPA, it is important to understand its history

and purpose. Congress enacted RLUIPA and the Religious Freedom Restoration Act

---

Clause under the Fourteenth Amendment. Count VI claims a violation of Florida's Religious Freedom Restoration Act. *See* ECF No. 1.

[9] Additionally, because this Court does not evaluate Plaintiff's equal terms provision claim, this Court does not consider Defendant's ripeness challenge to Plaintiff's as-applied equal terms provision claim. ECF No. 29.

[10] The Eleventh Circuit has not decided whether the jurisdiction requirement of RLUIPA, 42 U.S.C. § 2000cc(a)(2), applies to the equal terms provision or the exclusion and limits provision. *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1229–30 (11th Cir. 2004) ("While the application of a jurisdictional test to § (b) claims will provide fodder for future exercises in statutory interpretation, we do not reach this question."); *Bey v. City of Tampa Code Enforcement*, 607 F. App'x 892, 899 n.8 (11th Cir. 2015) ("We note that it is an open question in this circuit whether the jurisdictional provisions of § 2000cc(a)(2) apply to RLUIPA claims asserted under § 2000cc(b)."). Because this Court does not evaluate Plaintiff's claims under the equal terms provision or the exclusion and limits provision and because neither party asserts that the jurisdiction requirement applies to the equal terms provision or the exclusion and limits provision, this Court need not address the issue.

[11] Defendant does not challenge the constitutionality of RLUIPA. Even if it did, the Eleventh Circuit has deemed RLUIPA to be constitutional. *See Midrash*, 366 F.3d at 1236. This Court is bound by *Midrash*.

of 1993 ("RFRA") to provide "very broad protection for religious liberty." *Holt v. Hobbs*, 574 U.S. 352, 356 (2015). RFRA was enacted in response to, and three years after, the Supreme Court's decision in *Employment Division, Department of Human Resources of Oregon v. Smith*, 494 U.S. 972 (1990), "which held that neutral, generally applicable laws that incidentally burden the exercise of religion usually do not violate the Free Exercise Clause of the First Amendment." *Id.* at 357. Congress enacted RFRA "to provide greater protection for religious exercise than is available under the First Amendment." *Id.* "In making RFRA applicable to States and their subdivisions, Congress relied on Section 5 of the Fourteenth Amendment, but in *City of Boerne v. Flores*, 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997), [the Supreme Court] held that RFRA exceeded Congress' powers under that provision." *Id.*

In response, Congress enacted RLUIPA, "which applies to States and their subdivisions and invokes congressional authority under the Spending and Commerce Clauses." *Id.* Like RFRA, RLUIPA provides greater protection for religious exercise than is available under the First Amendment. *See Smith v. Allen*, 502 F.3d 1255, 1277 n.5 (11th Cir. 2007) ("RLUIPA offers greater protection to religious exercise than the First Amendment offers."), *abrogated on other grounds by Sossamon v. Texas*, 563 U.S. 277 (2011). Indeed, Congress mandated that RLUIPA's provisions are to be construed "in favor of a broad protection of religious

exercise, to the maximum extent permitted by the terms of this chapter and the Constitution." 42 U.S.C. § 2000cc-3(g).

### 2. *RLUIPA – Jurisdictional Requirement (42 U.S.C. § 2000cc(a)(2))* [12]

To exercise jurisdiction over Plaintiff's substantial burden provision claim, this Court must determine whether Plaintiff has satisfied the requirements set forth in 42 U.S.C. § 2000cc(a)(2). Jurisdiction is proper if "either (A) the burden is imposed in a federally-funded program or activity; (B) the burden affects, or removal of the burden would affect, interstate commerce; or (C) the 'burden is imposed in the implementation of land use regulation or system of land use regulations, under which a government makes . . . individualized assessment of the proposed uses for the property involved.' " *Midrash*, 366 F.3d at 1225 (quoting 42 U.S.C. § 2000cc(a)(2)).

Plaintiff relies on the third prong—the individualized assessment prong—of the jurisdiction requirement. There are three elements to the individualized assessment prong: (1) the Code constitutes a land use regulation, (2) that the Code is a regulation under which the government makes an individualized assessment, and (3) that the Code permits the government to assess the proposed use of property. *See*

---

[12] Defendant concedes that Plaintiff has satisfied the jurisdictional requirement. But, because the Eleventh Circuit has characterized 42 U.S.C. § 2000cc(a)(2) as a jurisdictional requirement, this Court, in an abundance of caution, undertakes an independent review.

*Martin v. Houston*, 196 F. Supp. 3d 1258, 1263 (M.D. Ala. 2016). Each element is satisfied.

The Code constitutes a land use regulation. Here, the Code divides the County into multiple zoning districts and limits the use or development of land based on the zoning district where the land is located. *See* 42 U.S.C § 2000cc-5(5) (defining "land use regulation" as "a zoning or landmarking law, or application of such a law, that limits or restricts a claimant's use or development land").

The Code also permits Defendant to make an individualized assessment of a property. Take the facts of this case as an example. In order to find a violation of the zoning ordinance, Defendant would have to determine whether three or more adults live on the Property and whether they are unrelated. Defendant would then have to determine whether the Property's use violates the Code. Further, the Code allows Defendant to enforce the zoning ordinance through the Board. Indeed, Defendant has twice evaluated the propriety of Plaintiff's use of the Property against the Code and has twice issued a cease and desist order. *See* ECF Nos. 1-4 & 1-5. It does not matter that the Code allows no room for argument as to the propriety of Plaintiff's use of the Property. *Martin*, 196 F. Supp. 3d at 1267 ("But the fact that the Act allows no room for argument as to what constitutes a public nuisance does not mean that Houston did not make an individualized assessment of Martin's property use thereunder."). Put otherwise, while the Code's language makes it easy to determine

16

whether Plaintiff's use violates the Code, Defendant still has to make, and did make, a determination about the propriety of the Property's use and enforce the zoning ordinance.

Finally, the Code allows Defendant to assess the proposed use of the Property. This is evident by the Notice of Violation and Notice of Repeat Violation. *See* ECF Nos. 1-4 & 1-5. In both notices, Defendant assessed Plaintiff's proposed use of the Property to house three or more unrelated adults.

In sum, this Court has jurisdiction over Plaintiff's substantial burden provision claim because Defendant makes an individualized assessment of the Property.

### 3.  *RLUIPA — Substantial Burden Provision (42 U.S.C. § 2000cc(a)(1))*

The substantial burden provision provides:

No government shall impose or implement a land use regulation in a manner than imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the of the burden on that person, assembly, or institution—
    (A) is in furtherance of a compelling interest; and
    (B) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc(a)(1). [13]

---

[13] In analyzing the substantial burden provision claim, this Court heeded Judge Pryor's guidance regarding the difference between the "secular-psychological" understanding and the "religious-spiritual" understanding of religion. *See United States v. Brown*, 947 F.3d 655, 699 (11th Cir. 2020) (Pryor, J., dissenting). This difference is the reason why RLUIPA obviates the need for a court—a member of the "judicial elite" that "may not be ideally equipped" to understand one's interaction with God and one's religious belief—to determine whether a religious belief is integral to one's faith. This Court, therefore, did not attempt to define Plaintiff's religious exercise;

In order to succeed on the merits, Plaintiff must show (1) a religious exercise (2) is substantially burdened because of Defendant's imposition or implementation of a land use regulation. If Plaintiff establishes these elements, Defendant must justify the burden by showing that the burden furthers a compelling interest and the means chosen are the least restrictive. *See Midrash*, 366 F.3d at 1225; *Konikov v. Orange Cty., Fla.*, 410 F.3d 1317, 1323 (11th Cir. 2005).

A. Religious Exercise

RLUIPA defines religious exercise broadly. Under RLUIPA, religious exercise "includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7). Furthermore, "[t]he use, building, or conversion of real property for the purpose of religious exercise shall be considered to be religious exercise of that person or entity that uses or intends to use the property for that purpose." *Id.* RLUIPA's provisions are to be "construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution." 42 U.S.C. § 2000cc-3(g).

Before RLUIPA, courts considering a substantial burden on religious exercise would analyze whether the religious exercise implicated by zoning decisions was

_____

rather, it allowed Plaintiff to describe its religious exercise. Similarly, in determining the sincerity of Plaintiff's purported religious belief, this Court did not substitute its secular understanding with Plaintiff's spiritual one; instead, it examined whether Plaintiff acted consistently with its purported belief. At the core of Judge Pryor's dissent in *Brown* is the principle that a court is not well equipped to fully understand a person's interaction with God because a person's religious belief and interaction with God is personal. The principle applies with full force in the RLUIPA context.

integral to a person's faith. *See Midrash*, 366 F.3d at 1226 (collecting cases). However, "RLUIPA obviates the need for such analysis by providing a statutory definition of 'religious exercise.' " *Id.* It is, therefore, not for this Court to determine whether a particular belief is supported by religious law or doctrine. *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 782, 724 (2014) ("[F]ederal  courts have no business addressing . . . whether the religious belief asserted in a RFRA case is reasonable."). Instead, the question is whether the zoning ordinance implicates Plaintiff's religious exercise and whether Plaintiff's belief is sincere. *Id.*; *Gardner v. Riska*, 444 F. App'x 353, 355 (11th Cir. 2011) (stating in prison context that RLUIPA "does not preclude inquiring into the sincerity of a prisoner's professed religiosity").

Plaintiff believes that God has called on it to use the space it has available to serve those in need, particularly those who are most shunned in society—registered sex offenders. ECF No. 1-1, ¶¶ 5 & 10. Its mission is to serve everyone regardless of their past in the hope that they find love, forgiveness, and a new life in Jesus—a life that seeks and grows righteousness and holiness. ECF No. 1-1, ¶¶ 6 & 17.  To exercise its belief and mission, Plaintiff runs the Program at the Property. The Property is a three-bedroom home and can host three or more unrelated adults. ECF No. 1-1, ¶ 10. According to Plaintiff, God has called on it to use the Property to serve as many adults as possible.

19

Plaintiff's religious exercise may, therefore, be described as the use of the Property to house and rehabilitate as many unrelated adults as it can. Such a use of the Property constitutes a religious exercise under RLUIPA. 42 U.S.C. § 2000cc-5(7) ("[T]he use . . . of real property for the purpose of religious exercise shall be considered to be religious exercise of that person or entity that uses or intends to use the property for that purpose."). The Property, and therefore Plaintiff's religious exercise, is also subject to a land use regulation—the Code.

Furthermore, Plaintiff's religious belief is sincere. Defendant does not question the sincerity of Plaintiff's religious belief. There is not a scintilla of evidence in the record to suggest that Plaintiff espouses religious belief to further a non-religious goal. Indeed, since 2013, Plaintiff has served roughly eighty men at the Property. Plaintiff's stated purpose, mission, and goal is entirely consistent with its use of the Property. And lastly, Plaintiff's commitment to serving anyone regardless of their past is consistent with the most basic tenants of Christianity.

Having determined Plaintiff's use of the Property constitutes religious exercise and that the exercise is subject to a land use regulation, the issue becomes whether the land use regulation—the Code—imposes a substantial burden on Plaintiff's religious exercise.

B. <u>Substantial Burden</u>

RLUIPA does not define "substantial burden," and the Courts of Appeal are split on the definition. The Eleventh Circuit, however, has provided guiding factors to determine whether a burden is substantial. The Eleventh Circuit has "held that an individual exercise of religion is 'substantially burdened' if a regulation completely prevents the individual from engaging in religiously mandated activity." *Midrash*, 336 F.3d at 1227. But, in order to show a substantial burden on its religious exercise, Plaintiff need not show that the Code completely prevents it from exercising its religious belief. *See id.* (declining to adopt the Seventh Circuit's definition of substantial burden which requires a land use regulation to render religious exercise effectively impracticable). This is because such a standard would render the exclusion prohibition provision of RLUIPA superfluous and would violate the explicit purpose of the Act—to provide broad protection to a person's religious exercise. *See* 42 U.S.C. § 2000cc-3(g). Thus, a complete prevention of religious exercise is sufficient, but not necessary, to establish a substantial burden.

A substantial burden, then, is something short of a complete prevention but "more than an inconvenience of religious exercise." *Midrash*, 336 F.3d at 1227. It "is akin to significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly. Thus, a substantial burden can result from pressure that tends to force adherents to forego religious precepts or from pressure

that mandates religious conduct." *Id.* In plain language, a substantial burden falls somewhere on the spectrum between inconvenience to a religious exercise and complete prevention of a religious exercise.

Defendant argues that this case is analogous to *Men of Destiny Ministries, Inc. v. Osceola County*, No. 6:06-cv-624-Orl-31DAB, 2006 WL 3219321 (M.D. Fla. Nov. 6, 2006), where the court found that the plaintiff's ability to relocate its program to another district within the county alleviated the burden on the plaintiff's religious exercise. There are several cases, including *Midrash*, where courts have found that relocation within a county, while inconvenient, does not amount to a substantial burden because the religious institution has the ability to relocate within the county. This case is distinguishable. As discussed above, *supra* section II, Plaintiff cannot establish the Program to house three or more unrelated individuals as a principal or conditional use in any district within the County. Ms. Pell's testimony to the contrary is not credible because it is a post-hoc justification that is inconsistent with her prior interactions with Plaintiff. Moreover, the Code does not allow Plaintiff to seek a variance to establish the Program. The combination of the Code's prohibition of Plaintiff's use and Plaintiff's inability to seek a variance forecloses Plaintiff's ability to relocate the Program to any other district within the

22

County.[14] Therefore, it is no answer that the court in *Men of Destiny Ministries* found no substantial burden.

While not analogous to this case, *Midrash* and *Men of Destiny Ministries* help delineate the difference between an inconvenience to religious exercise and a substantial burden on religious exercise. In both cases, the plaintiffs had the ability to relocate and, therefore, alleviate any burden imposed by the land use regulation. The ability to alleviate the burden meant that the burden was not substantial, but rather an inconvenience that could be cured by relocating. Therefore, a burden on religious exercise that can be cured may constitute an inconvenience. *See, e.g.*, *Williams Island Synagogue, Inc. v. City of Aventura*, 358 F. Supp. 2d 1207, 1215 (S.D. Fla. 2005) (finding no substantial burden because, among other things, the plaintiff's ability to cure the problems in its current location alleviated the burden imposed on its religious exercise resulting from a denial of a conditional use permit to relocate to a proposed location); *Men of Destiny Ministries*, 2006 WL 3219321, at *5 (finding no substantial burden because the plaintiff could cure the burden

---

[14] It is Plaintiff's burden to demonstrate a substantial burden to its religious exercise. In furtherance of that burden and to distinguish its situation from the plaintiffs' in cases such as *Men of Destiny Ministries* and *Midrash*, Plaintiff would have to demonstrate that it is unable to establish its Program in another district within the County. Plaintiff carried its burden by providing the testimony of its director and an email correspondence between Plaintiff and Ms. Pell. Defendant had the opportunity to rebut Plaintiff's evidence. Defendant failed to effectively rebut Plaintiff's evidence by providing the declaration of Ms. Pell that is inconsistent with her previous discussions with Plaintiff.

imposed by the regulation by relocating its program to another location in the county). By contrast, a burden on religious exercise may be substantial if the burden cannot be cured in a way that does not directly impact a plaintiff's religious exercise. This is not dispositive, but merely a factor in determining whether a burden is an inconvenience or is substantial.

Here, Plaintiff defines its religious belief as helping as many adults-in-need as it can. To exercise its religious belief, Plaintiff leased the Property, a three-bedroom home, in order to house unrelated adults, including registered sex offenders, and help them find love, forgiveness, and a new life in Jesus. Plaintiff leased the Property only after it was informed by Defendant's Planning and Zoning Department that it could house up to six unrelated adults at the Property. Plaintiff describes its religious exercise as using the Property to house and rehabilitate as many adults-in-need as it can, which in this case would be six unrelated adults.

Plaintiff had used the Property to run the Program as intended for a year and a half before Defendant imposed a two-adult limitation by recharacterizing Plaintiff's use of the Property and, subsequently, amending the Code.[15] This two-adult limitation imposes a substantial burden on Plaintiff's religious exercise. The

---

[15] While discriminatory intent is not a factor in analyzing an alleged violation of the substantial burden provision of RLUIPA, it is worth noting that the undisputed record is rife with facts suggesting animus towards Plaintiff's use of the Property. The record indicates that Defendant limited Plaintiff's use of the Property because Defendant's constituents and Defendant's agents, like the Sheriff's Deputy, did not endorse Plaintiff's use of the Property as a religious transition home for registered sex offenders.

limitation reduces the number of individuals Plaintiff can serve by two-thirds. The limitation further forces Plaintiff to turn away adults that it is called upon by God to serve, even though Plaintiff is willing and able to serve them. Moreover, the two-person limitation would force Plaintiff, in violation of its religious belief, to evict its residents.

Unlike cases where the plaintiffs sought optimal use of the land, Plaintiff here does not seek to build additional rooms in the Property or expand the number of individuals it can serve at the Property; instead, Plaintiff only seeks to continue to use the Property as it did for a year and a half after seeking approval from the County. *Cf., e.g.*, *Vision Church v. Village of Long Grove*, 468 F.3d 975, 997–1000 (7th Cir. 2006) (noting that because the church would be permitted to build a smaller facility under the ordinance, the government's conditions on approval of the permit limiting the size of the building and the number of services and activities to be conducted did not impose a substantial burden on the plaintiff's religious exercise); *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 739–41 (finding that the government's refusal to grant additional footage to build an "ideal building" did not constitute a substantial burden because the existing building permitted plaintiff to exercise its religious belief, and it could build an additional 14,000 square-foot of building). This case is also dissimilar to cases where a church seeks to grow its facilities so that it can expand its religious exercise. *Cf., e.g.*, *Church of Scientology*

*of Ga., Inc. v. City of Sandy Springs, Ga.*, 843 F. Supp. 2d 1328 (N.D. Ga. 2012). Instead, this case is similar to a hypothetical situation where an entity built a church where at least sixty individuals could pray, used the church to host sixty individuals for a number of years, and then was coerced by the government, without a compelling justification, to limit the number of individuals to twenty. By any measurement, such a drastic limitation constitutes a substantial burden.

Moreover, unlike the plaintiffs in *Midrash*, *Men of Destiny Ministries*, and *Williams Island Synagogue*, Plaintiff is unable to cure the burden imposed by the two-adult limitation. Plaintiff can neither establish the Program as a principal or a conditional use in any of the districts within the County, nor apply for a variance. Plaintiff is stuck with the burden imposed by the two-adult limitation.

Defendant leaves Plaintiff with a binary choice: either conform its religious exercise and reduce the number of residents in the Property by two-thirds, turn away individuals it can help, and evict individuals that it is currently helping; or risk fines and eviction. Such a burden which cannot be alleviated is not a mere inconvenience; rather, it puts substantial pressure on Plaintiff to change its religious exercise so that it may conform to Defendant's requirements. The two-adult limitation, therefore, imposes a substantial burden on Plaintiff's religious exercise. *See First Lutheran Church v. City of St. Paul*, 326 F. Supp. 3d 745, 761 (D. Minn. 2018) ("A government regulation substantially burdens an exercise of religion when the

26

regulation's effects go beyond being an inconvenience to a religious institution, and instead put substantial pressure on the institution to change that exercise.") (citing multiple cases).

Defendant argues that the substantial burden imposed on Plaintiff's religious exercise is due to a self-imposed hardship. In support, Defendant cites to *Andon, LLC v. City of Newport News, Virginia*, 813 F.3d 510, 515 (4th Cir. 2016), which stands for the proposition that "[a] self-imposed hardship generally will not support a substantial burden claim under RLUIPA, because the hardship was not imposed by governmental action altering a legitimate, pre-existing expectation that a property could be obtained for a particular land use." It does not appear that the Eleventh Circuit or the courts within the circuit have adopted the self-imposed hardship rule. But, even if they had, there is no self-imposed hardship here. In *Andon*, the plaintiff knowingly entered a lease for a non-conforming property. *Id.* Here, the record is devoid of facts indicating that Plaintiff knew that it was not allowed to set up the Program at the Property prior to signing the lease. To the contrary, Plaintiff sought clarification from the County's Planning and Zoning Department before opening its transition home at the Property and the Department informed Plaintiff that its use qualified as a family care home—a use that was permitted by the Code in the RR-1 zoning district.

As a concluding thought, this Court notes that so long as Plaintiff's exercise of its religious belief meets the expansive definition of religious exercise under RLUIPA, neither this Court nor Defendant may second-guess Plaintiff's description of its religious exercise. It could be argued that such a standard would subsume the substantial burden inquiry by allowing a plaintiff to define religious exercise in an expansive manner such that any burden imposed by a regulation would almost always constitute a substantial burden. In other words, allowing a plaintiff to define its religious exercise would result in a plaintiff being able to do what it wants, without any reasonable limitation. Not so. There are two important limitations that Congress and courts have imposed. First, defendants and the courts may question the sincerity of the plaintiff's religious exercise. Second, RLUIPA allows a government to impose a limitation—even if it substantially burdens a plaintiff's religious exercise—so long as the limitation is the least restrictive means of serving a compelling interest.

For example, assume Plaintiff in this case had defined its religious exercise as using the Property to house at least ten unrelated adults. Under this hypothetical, this Court would likely find Plaintiff's religious exercise to be insincere because Plaintiff's actions—renting a home that could not reasonably accommodate ten unrelated adults—would have been inconsistent with its religious exercise. But even if this hypothetical religious exercise was sincere, RLUIPA would still permit

28

Defendant to impose a reasonable limitation. Defendant could argue, for example, that allowing ten individuals to live in a three-bedroom home is unsafe and that it has a compelling interest in the safety of its residents. Surely, such an interest would be of the highest order; and so long as the limitation was the least restrictive means of furthering a compelling interest, RLUIPA would not foreclose Defendant from imposing such a limitation.

Here, however, as described *supra* Section IV.3.A, Plaintiff's religious exercise is sincere and, as shown *infra* Section IV.3.C, Defendant has neither put forth a compelling interest that justifies the burden nor shown that the limitation is the least restrictive means of furthering a compelling interest.

For these reasons, the Code imposes substantial burden on Plaintiff's religious exercise.[16]

---

[16] In a recent decision, Justice Alito provided guidance in determining when a defendant substantially burdens a plaintiff's religious exercise. *See Little Sisters of the Poor v. Pennsylvania*, No. 19-431, 591 U.S. ___ (July 8, 2020) (Alito, J., concurring). The majority in *Little Sisters* did not reach the "substantial burden" claim under RFRA and, therefore, Justice Alito's concurrence is not binding on this Court and does not supersede the Eleventh Circuit's guidance on substantial burden. Justice Alito's definition of substantial burden is more expansive than the definition adopted by the Eleventh Circuit and used by this Court. According to the Justice, an analysis of whether a defendant imposes a substantial burden on a religious exercise "can be separated into two parts." *Id.* "First, would non-compliance have substantial adverse practical consequences?" *Id.* "Second, would compliance cause the objecting party to violate its religious beliefs, *as it sincerely understands them*?" *Id.* (emphasis in the original). Under Justice Alito's standard, the Code undoubtedly imposes a substantial burden on Plaintiff's religious exercise. Non-compliance with the Code will have substantial adverse practical consequences for Plaintiff—fines and eviction. And complying with the Code would result in Plaintiff violating its sincerely held religious belief—help as many adults as it can at the Property, which in this case would be up to six unrelated adults.

29

### C.  Compelling Interest and Least Restrictive Means

To justify the substantial burden, Defendant must show that "imposition of the burden . . . is in furtherance of a compelling interest . . . [and] is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc(a)(1). Compelling government interests are "interests of the highest order." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993).

Defendant argues that it has a compelling interest in allowing CRH (small) to operate in residential areas. That may be so. But that is not what RLUIPA asks. RLUIPA requires Defendant to show "a compelling interest in imposing burden on religious exercise in the particular case at hand." *Westchester Day Sch. v. Vill. of Mamaroneck*, 504 F.3d 338, 353 (2d Cir. 2007) (citing *Gonzalez v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 432 (2006)). Defendant's justification boils down to its interest in enforcing its zoning regulation and furthering its zoning regulation's purpose in a general way. That is not enough. Defendant must establish that it has a compelling interest in excluding Plaintiff's use of the Property as intended from RR-1 zoning district. This makes sense. If Defendant could merely show a compelling interest in enforcing zoning regulations in general, then the compelling interest prong of the strict scrutiny test would eviscerate RLUIPA cases. *Covenant Christian Ministries, Inc. v. City of Marietta,*

*Ga.*, No. 1:06-cv-1994-CC, 2008 WL 8866408, at *14 n.9 (N.D. Ga. Mar. 31, 2008). Defendant has failed to meet its burden.

But even assuming Defendant has identified a compelling interest in excluding Plaintiff's intended use of the Property from the RR-1 zoning district, Defendant has not satisfied the strict scrutiny requirement. Defendant does not even attempt to argue that its limitation is the least restrictive means of furthering its compelling interest.

For these reasons, Plaintiff is substantially likely to succeed on its substantial burden provision claim.

## V.  IRREPARABLE INJURY

Plaintiff has established a violation of its RLUIPA rights and has therefore satisfied the irreparable harm requirements. *See Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 295 (5th Cir. 2012) ("[Plaintiff] has satisfied the irreparable-harm requirement because it has alleged violations of its First Amendment and RLUIPA rights."). "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable harm." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). "This principle applies with equal force to the violation of RLUIPA rights because RLUIPA enforces First Amendment freedoms . . . ." *Opulent Life Church*, 697 F.3d at 295 (citation omitted).

RLUIPA defines religious exercise to include use of real property. 42 U.S.C. § 2000cc-5(7). Absent an injunction, Plaintiff will be precluded from using the Property for Plaintiff's intended purpose. Plaintiff will be forced, against its sincerely held religious belief, to evict at least one of its residents. Defendant, however, argues that Plaintiff may simply relocate the Program to another district. As shown above, this Court finds that Plaintiff is unable to relocate to another district. Therefore, without an injunction, Plaintiff would have to violate its religious belief, and consequently, would suffer irreparable harm.

## VI. BALANCE OF INTERESTS

To counter Plaintiff's harm, Defendant argues that an injunction would violate the underlying purpose of its zoning ordinance. While that may be true, on balance, the harm to Plaintiff's religious exercise in the absence of an injunction far outweighs any harm Defendant would suffer if an injunction is entered.

## VII. PUBLIC INTEREST

"The vindication of constitutional rights and the enforcement of a federal statute serve the public interest almost by definition." *League of Women Voters of Fla. v. Browning*, 863 F. Supp. 2d 1155, 1167 (N.D. Fla. 2012). This principle applies to RLUIPA, which enforces First Amendment rights. An injunction protecting Plaintiff's rights under RLUIPA would serve the public interest.

## VIII.  CONCLUSION

Plaintiff has demonstrated that it is entitled to a preliminary injunction. Specifically, Plaintiff is substantially likely to succeed on its substantial burden provision claim and the remainder of the factors also support an injunction.

When "the court decides to grant an injunction, it must also ascertain what relief to provide, keeping in mind that the purpose of the injunction is not to conclusively determine the rights of parties, but to balance the equities in the interim as the litigation proceeds." *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1327 (11th Cir. 2019) (citation omitted). "So it is axiomatic that district court 'need not grant the total relief sought by the applicant but may mold its decree to meet the exigencies of the particular case.' " *Id.* (citation omitted).

Accordingly,

**IT IS ORDERED:**

1. Plaintiff's motion for preliminary injunction, ECF No. 14, is **GRANTED in part**.

2. Defendant Wakulla County (including its officers, agents, servants, employees, attorneys, and other persons in active concert or participating with it) is preliminarily enjoined from enforcing its Land Use Development Code to prevent or attempt to prevent Plaintiff from using the Property located at

33

55 Ball Court, Crawfordville, Florida 32327, as a religious transition home for three to six unrelated adults until further order of this Court.

3. The bond provisions of Rule 65(c) of the Federal Rules of Civil Procedure are waived, and this preliminary injunction shall issue immediately.

**SO ORDERED on July 9, 2020.**

**s/Mark E. Walker**
**Chief United States District Judge**